UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ULISES REYES,

    Plaintiff,

v.                                                 Case No:   6:14-cv-817-Orl-40TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## REPORT AND RECOMMENDATION

Plaintiff Ulises Reyes brings this action pursuant to the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claims for Disability Insurance Benefits and Supplemental Security Income under the Act. Plaintiff argues that the administrative law judge ("ALJ") erred by failing to appreciate the severity of Plaintiff's mental impairments at steps two and three of the five-step sequential evaluation process, and in assessing Plaintiff's residual functional capacity (J.M. at 1). Based upon a review of the administrative record and the pleadings and joint memorandum submitted by the parties, and for the reasons that follow, I respectfully recommend that the Commissioner's final decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

### I. Background

Plaintiff, a former car porter, parts clerk, and driver with an 11th grade education, protectively filed applications for benefits on December 30, 2010, alleging that he became disabled on November 1, 2008 (Tr. 18, 204–08, 210–15, 246).   His applications were

denied initially and on reconsideration, and he requested a hearing which was held on August 6, 2013 (Tr. 18, 33-67, 131-41, 145-56). At the hearing, Plaintiff amended his alleged onset date to June 1, 2012 (Tr. 18, 36-37). On September 10, 2013, the ALJ issued her decision denying Plaintiff's applications for benefits (Tr. 15-32). Plaintiff requested review by the Appeals Council, which was denied by order dated February 2, 2014 (Tr. 1-8, 11-14).

The ALJ employed the five step sequential evaluation process which appears at 20 C.F.R. §§ 404.1520 and 416.920 to evaluate Plaintiff's claims.[1] At step one of the process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his amended alleged onset date (Tr. 20). At step two, the ALJ concluded that Plaintiff was severely impaired by degenerative disc disease and affective disorder (Id.). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment (Tr. 22-24).

Then the ALJ found that Plaintiff had the residual functional capacity to perform sedentary work subject to the following limitations: he can only occasionally climb, stoop, kneel, crouch, and crawl; he can frequently use his dominant hand for fingering and feeling; he can only perform jobs that can be learned in 30 days or less; he should perform the same job activities over and over during an 8-hour day; and he can have at most occasional contact with the public (Tr. 24-27).

---

[1] The five steps are summarized as follows:
 1. Is the claimant performing substantial gainful activity?
 2. Does the claimant have a severe impairment?
 3. Does the claimant have a severe impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?
 4. Can the claimant perform past relevant work?
 5. Based on the claimant's age, education, and work experience, can the claimant perform other work of the sort found in the national economy?

Based upon Plaintiff's residual functional capacity, the ALJ decided at step four of the evaluation process that Plaintiff could not perform his past relevant work (Tr. 27). However, based on the testimony of a vocational expert, the ALJ found at step five that Plaintiff could perform other work available in significant numbers in the national economy, including as an escort vehicle driver and a table worker (Tr. 27-28). Based on these findings, the ALJ concluded that Plaintiff was not disabled (Tr. 28).

## II. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence. Crawford v. Commissioner, 363 F.3d 1155, 1158 (11th Cir. 2004). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." Winschel v. Commissioner, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence, the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]" Id. "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam); accord Lowery v.

Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

There is a presumption in favor of the ALJ's findings of fact, but this presumption does not attach to the ALJ's conclusions of law. Welch v. Bowen, 854 F.2d 436, 438 (11th Cir. 1988) (per curiam). The Court will reverse a final decision if the ALJ incorrectly applied the law or failed to provide sufficient reasoning for the Court to determine whether the ALJ properly applied the law. Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1992). When it reviews the Commissioner's final decision, the Court is authorized to "enter ... a judgment affirming, modifying, or reversing the decision ... with or without remanding the cause for a hearing." 42 U.S.C. § 405(g).

### III. Discussion

The scheduling order in this case directed Plaintiff to "identify and frame, in a neutral fashion, each of the disputed issues that Plaintiff is raising as the grounds for reversal and/or remand. Each issue should be set forth in a separate subheading." (Doc. 18 at 4). As an example, the scheduling order provides: "Issue No. 1 – Whether the ALJ Properly Evaluated Plaintiff's Subjective Complaints of Pain." Here, Plaintiff raises one issue, which is anything but neutrally framed and is so long that it requires a block quotation:

> ALJ Jones committed error as a matter of law by failing to appreciate the severity of Plaintiff Reyes' affective disorder when determining both Plaintiff's "B" criteria impairment levels and his mental residual functional capacity and as a result ALJ Jones failed to ask proper hypothetical questions to the vocational expert.

(J.M. at 15).

Most of Plaintiff's argument consists of recitations of legal standards and long

- 4 -

block quotations (which are not set off as such) from the record and other sources, including Social Security Regulations and the DSM-IV-TR. Regrettably, Plaintiff spends very little time applying the law to the facts of the case. The thrust of his argument is that the ALJ failed to "consider the combined effects of all of Plaintiff['s] ... impairments" and "evaluate[] Plaintiff ... as a whole person" because he did not "appreciate the significance of Plaintiff['s] ... Axis I diagnosis of 'Major Depressive Disorder, Recurrent, Severe Without Psychotic Features, Axis IV diagnosis of 'Unemployed; Limited social support; No health insurance coverage; Difficulty completing activities of daily living,['] and Axis V GAF of 54." (J.M. at 18-19). Plaintiff does not explain why this is the case, but suggests that his GAF score of 54 shows that he "had serious symptoms which would be expected to result in moderate impairment of his social and occupational functioning[,] i.e. ... that Plaintiff's mental health would result in his moderate difficulty keeping a job." (J.M. at 20-21). Plaintiff argues that as a result of the ALJ's alleged failure to adequately consider Plaintiff's affective disorder, the ALJ's hypothetical question to the vocational expert did "not describe all of plaintiffs [sic] limitations in combination" and violated "the ... Commissioner's regulations as expressed in the Listing of Impairments," specifically Listing 12.00 (J.M. at 23). Plaintiff also asserts that the ALJ "fail[ed] to appreciate the severity of Plaintiff['s] ... affective disorder when determining both Plaintiff's 'B' criteria impairment levels." (J.M. at 27).

The ALJ's decision demonstrates that she in fact considered Plaintiff's diagnosis of major depressive disorder in evaluating his impairments at each step of the five-step process. At step two, the ALJ discussed at some length the psychological consultative examination report of Dr. William Austin, the source of the diagnoses Plaintiff argues the ALJ did not "appreciate":

> In a psychological consultative examination with William Austin, Psy.D., it was noted that the claimant reported being on psychotropic medication from 2001 to 2002 with psychotherapy from 2000 to 2001. He did not recall a diagnosis. He also claimed to have one psychiatric hospitalization when he was in his twenties for suicidal thoughts. He claimed to have present auditory hallucinations. He claimed they began last year and occurred [sic] one time monthly. He further reported symptoms such as sadness, loss of interest, crying spells, irritability, suicidal thoughts, difficulty sleeping, hopelessness, and worthlessness. He reported daily activities including waking at 4:00am and going bed at 11:00pm. He reported difficulty bathing, dressing, and grooming. He claimed that he was unable to put on socks and his daughter assisted him with dressing. He claimed he stayed home most of the day, but occasionally ran errands with his daughter. He stated that he did not have friends but had a supportive family. He reported that he attended church on occasion and had a driver's license although had not driven in six months. A mental status examination showed that the claimant demonstrated adequate grooming and casual dress. An abnormal gait was observed and he was wearing a back brace. He also repeatedly stood throughout the evaluation and exhibited difficulty getting up from his chair as well as limited mobility in his neck. He was fully oriented and cooperative. His mood was noted to be dysphoric and his affect was flat and tearful at times. No impairment in functioning was noted. He was able to recall events from his recent and remote past. His attention and concentration were fair. No symptoms indicative of psychosis was observed despite his report of hallucinations and he denied suicidal ideation. The claimant was diagnosed with major depressive disorder, without psychotic features, and his functional ability was noted to be moderately limited to severely impaired based on symptoms of depression and difficulty completing activities of daily living. Dr. Austin also opined that the claimant's social functioning was moderately impaired based on reports of limited social support and limited social outings (Ex. 2F).

(Tr. 21-22; see also Tr. 369-73).

The ALJ discussed Dr. Austin's opinion in evaluating Plaintiff's impairments at step three of the five-step sequential evaluation process and in assessing Plaintiff's residual functional capacity. At step three, the ALJ found that Plaintiff had "mild restriction" in

- 6 -

activities of daily living (Tr. 23). The ALJ gave Dr. Austin's opinion "little weight" on this issue because "[i]t does not appear that Dr. Austin considered" Plaintiff's ability to perform daily activities and the fact that his "functional limitations appear to be mostly affected by his physical impairments, unrelated to mental health issues." (Tr. 23).

Later, in her assessment of Plaintiff's residual functional capacity, the ALJ more fully evaluated Dr. Austin's opinion as required by 20 C.F.R. §§ 404.1527 and 416.927:

> Dr. Arnold's [sic] opinion regarding the claimant's functional limitations is given little weight, as it lacks support from any medical evidence of record. Instead, it seems that Dr. Austin based his opinion purely in the claimant's subjective allegations stating, "the claimant's social functioning was moderately impaired based on reports of limited social support and limited social outings." Moreover, the claimant stated that he was able to get along with others. Considering the claimant's credibility issues identified [earlier in the RFC assessment], an opinion based on the claimant's allegations alone would not be very reliable.

(Tr. 26).[2] Plaintiff does not take issue with any of the ALJ's reasons for discounting Dr. Austin's opinion. And, Plaintiff does not argue that the ALJ's evaluation of Dr. Austin's report failed to comply with the Act or the Commissioner's regulations.

More generally, the ALJ's findings at each stage of the sequential evaluation process demonstrate that she took Plaintiff's mental impairments into account. At step two, she found that Plaintiff suffered from a severe affective disorder–a class of disorders that includes major depressive disorder (Tr. 20-22). At step three, she evaluated Plaintiff's impairments under the listing for affective disorders and found moderate

---

[2] As the Commissioner concedes, the ALJ did not mention the Global Assessment of Functioning ("GAF") score of 54 that Dr. Austin assigned to Plaintiff (J.M. at 29-32). But, I agree with the Commissioner that, to the extent Plaintiff intended to raise this argument, it was inadequately developed and therefore waived (J.M. at 31-32). Moreover, any error the ALJ committed by failing to mention the GAF score is harmless given the ALJ's thorough discussion and evaluation of Dr. Austin's opinion. The ALJ concluded that Dr. Austin overstated the severity of Plaintiff's mental impairments, and there is no reason to believe that the ALJ would not reject the GAF score–which is presumably based on the findings elsewhere in Dr. Austin's report–for the very same reason.

limitations in social functioning and concentration, persistence, and pace (Tr. 22-23). In Plaintiff's residual functional capacity assessment, she limited him to unskilled jobs that involve repetitive tasks and require at most occasional contact with the public (Tr. 24-27).[3] Aside from the reference to Dr. Austin's opinion, which the ALJ rejected, Plaintiff does not explain why these findings failed to adequately account for his mental impairments. Accordingly, I recommend that the Court reject Plaintiff's assignment of error and affirm the ALJ's decision.

In the conclusion of the Joint Memorandum, Plaintiff included several arguments that he raised for the first time in the final draft he sent to the Commissioner at 4:43 pm the day before the Joint Memorandum was due (J.M. at 36-39 & n. 3; Doc. 26). The Commissioner objected to these untimely arguments and on March 30, 2014, I entered an Order directing Plaintiff to respond to the objections (Doc. 23). In his response, Plaintiff conceded that the arguments in the conclusion were not presented to the Commissioner until the day before the Joint Memorandum was due and that the Court would be justified in disregarding these arguments (Doc. 25). After due consideration, I sustained the Commissioner's objection and stated that the Court would not consider Plaintiff's untimely arguments in deciding the case (Doc. 26). For this reason, I have not discussed Plaintiff's additional arguments in this report and recommendations.

## IV. Recommendation

---

[3] To the extent Plaintiff intended to argue that the ALJ erred in failing to account for moderate limitations found at step three in assessing Plaintiff's residual functional capacity, see Winschel v. Commissioner, 631 F.3d 1176, 1180-81 (11th Cir, 2011), this argument was inadequately developed and therefore waived. See, e.g., T.R.C. ex rel. Boyd v. Commissioner, 553 Fed. Appx. 914, 919 (11th Cir. 2014) (citing N.L.R.B. v. McClain of Ga., Inc., 138 F.3d 1418, 1422 (11th Cir. 1998)); Wilson v. Astrue, No. 3:09-cv-273-J-HTS, 2009 WL 5218015, at *3 (M.D. Fla. Dec. 31, 2009) (a court "need not take upon itself the responsibility of attempting to develop lines of argument that counsel has omitted from his brief").

Upon consideration of the foregoing, I respectfully recommend that the Commissioner's final decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

Specific written objections to this report and recommendation may be filed in accordance with 28 U.S.C. § 636, and M.D. FLA. R. 6.02, within fourteen (14) days after service of this report and recommendation.   Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

**RESPECTFULLY RECOMMENDED** in Orlando, Florida on June 17, 2015.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record

- 9 -